In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00267-CR
______________________________


JEFFREY LEE PLUNKETT, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2003-C-018-CCL


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â After pleading guilty to murder, Jeffrey Lee Plunkett was sentenced October 7, 2003. 
Plunkett, acting pro se, now appeals from his conviction by a notice of appeal filed November 7,
2005.
Â Â Â Â Â Â Â Â Â Â Â Â Any notice of appeal from the conviction was due to be filed within thirty days of sentencing,
that is, by November 6, 2003. An appeal is perfected when notice of appeal is filed "within 30 days
after the day sentence is imposed . . . ." Tex. R. App. P. 26.2(a)(1). There is a fifteen-day window
after that deadline during which a motion for extension of time may be granted, allowing the notice
to be late-filed. Tex. R. App. P. 26.3. No such motion was filed.
Â Â Â Â Â Â Â Â Â Â Â Â Because Plunkett's notice of appeal was untimely, we lack jurisdiction over his appeal. Olivo
v. State, 918 S.W.2d 519 (Tex. Crim. App. 1996);


 see State v. Riewe, 13 S.W.3d 408, 413â14 (Tex.
Crim. App. 2000).
Â Â Â Â Â Â Â Â Â Â Â Â We dismiss the appeal for lack of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â December 15, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â December 16, 2005

Do Not Publish



 LEXIS 4363, at *3 (Tex. App.--Amarillo June 13, 2008, no pet.) (mem. op., not
designated for publication). Our review of counsel's performance is highly deferential. Ex parte
White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim.
App. 2000). There is a strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance and that the challenged action could be considered sound trial
strategy. Strickland, 466 U.S. at 689; White, 160 S.W.3d at 51; Tong, 25 S.W.3d at 712. Therefore,
we will not second guess the strategy of counsel at trial through hindsight. Blott v. State, 588 S.W.2d
588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex. App.--Texarkana 2005,
pet. ref'd). Where the record is silent as to why counsel failed to make an objection or take certain
actions, we will assume it was due to any strategic motivation that can be imagined, and the
appellant will have failed to rebut the presumption that trial counsel's actions were in some way
reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d
436, 441 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485-86 (Tex. App.--Texarkana
2005, pet. ref'd). In other words, we will not conclude the challenged conduct deficient unless it was
so outrageous that no competent attorney would have engaged in it. Thompson, 9 S.W.3d at 808;
Fox, 175 S.W.3d at 485-86. 

 Next, it is not enough for Ruiz to show that the errors had some conceivable effect on the
outcome of the proceeding. See Strickland, 466 U.S. at 693. To meet the second prong of the
Strickland test, Ruiz must show that the deficient performance damaged his defense to such a degree
that there is a reasonable probability the result or outcome of the trial would have been different. 
Id.; Tong, 25 S.W.3d at 712. We evaluate this factor while taking into consideration the totality of
representation and the particular circumstances of this case. Thompson, 9 S.W.3d at 813; Ex parte
Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). 

III. Application 

 A. The State's Argument Regarding Parole Was Proper 

 In accord with Article 37.07 of the Texas Code of Criminal Procedure, the trial court's
punishment charge stated:

 It is also possible that the length of time for which the defendant will be imprisoned
might be reduced by the award of parole.


 . . . if the defendant is sentenced to a term of imprisonment, he will not become
eligible for parole until the actual time served equals one-fourth of the sentence
imposed or 15 years, whichever is less, without any consideration of any good
conduct time []he may earn. 


 . . . .


 You may consider the existence of the parole law and good conduct time. However,
you are not to consider the extent to which good conduct time may be awarded to or
forfeited by this particular defendant. You are not to consider the manner in which
the parole law may be applied to this particular defendant.


See Byrd v. State, 192 S.W.3d 69, 71 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd).

 Ruiz complains that the State made an improper jury argument regarding parole when
arguing the following:

 A couple of things I would like to point out to you. On the two larger cases,
the 2 to 10 and the 5 to 99 or life, the Judge read you a portion about parole. What
you get to know about those two cases is those two cases, a person becomes eligible
for parole after serving one-quarter of their time or 15 years, whichever is less. 
Okay? 

 

 So let's take, for example, somebody gets 20 years. A quarter time is 5. It's less than
the 15, so they're eligible for parole in 5. That includes good time. All right? Make
sense? 

 

 Now, let's say somebody got 70. Quarter time of that is 17 and a half. 15 is less than
17 and a half, so they would become eligible in 15. What the law says is you can't
go back and say, Hey, let's give somebody 50 because they're going to be eligible in
a quarter time. Can't do that. But the law does say you can be aware of that for your
deliberations. Okay?


The State may explain the parole law's existence. Taylor v. State, 233 S.W.3d 356, 358 (Tex. Crim.
App. 2007); see also Taylor v. State, 911 S.W.2d 906, 911-12 (Tex. App.--Fort Worth 1995, pet.
ref'd) (State's jury argument that "if a person is sentenced to 20 yearsÂ .Â .Â .Â then they become eligible
to be considered for release on parole after one quarter, which is five" merely discussed the trial
court's charge and was proper). This issue has been decided by the Texas Court of Criminal Appeals
and by this Court. Taylor, 233 S.W.3d at 358; Johnson v. State, No. 06-04-00038-CR, 2004 Tex.
App. LEXIS 11106, at *2-3 (Tex. App.--Texarkana Dec. 10, 2004, no pet.) (not designated for
publication) (holding counsel's failure to object to State's argument regarding parole law not
ineffective assistance of counsel).

 In Taylor, the trial court's jury charge tracked the parole language employed by the trial court
in this case. 233 S.W.3d at 358. During closing argument, the State argued, "A 40-year sentence
means the defendant becomes eligible for parole after serving 20 years. Â .Â .Â .Â A 60-year sentence
means he becomes eligible after serving 30 years. A sentence of life or 75 still means he becomes
eligible after 30 years." Id. The Texas Court of Criminal Appeals held this argument was proper
because the State "did not convey any information beyond what was properly contained in the charge
when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and
seventy-five year sentences." Id. at 359. 

 In Sanchez, the defendant complained that the State's argument that the jury would "see that
the only protection of the community that you can be assured of would be half of whatever you send
him," and the State's calculation if "you send him for 40 years, he would only be there for 20," was
an "attempt to inappropriately apply the parole law" to the defendant. 2008 Tex. App. LEXIS 4363,
at *6. The Amarillo Court of Appeals held defendant's counsel was not ineffective in failing to
object because the State committed no error since the language regarding parole during jury
argument merely tracked the trial court's jury charge. Id. at *6-7. 

 Here, as in Taylor and Sanchez, the State merely tracked the language in the jury charge and
explained the application of the parole formula in general terms. As such, no error was committed.

 Ruiz's first point of error is overruled.

 B. Plea Bargain

 Unless clearly invited by defense counsel or introduced as evidence by the defense, attempts
at plea bargaining should never be alluded to in argument by prosecutors. Clayton v. State, 502
S.W.2d 755, 757 (Tex. Crim. App. 1973). During jury argument, the State said, "You know,
sometimes the reality is that the State and the defendant can't agree on a plea bargain. That's why we
have the 12 of you." (4)

 Even assuming arguendo that this argument constituted error, declining to object to a portion
of the State's argument is often an inherently tactical decision based on the way the trial is unfolding
and the trial strategy employed. Taylor v. State, 947 S.W.2d 698, 704 (Tex. App.--Fort Worth 1997,
pet. ref'd). Counsel could have made a tactical decision not to draw attention to, or re-enforce the
State's argument in front of the jury. Absent a record stating the reasons for counsel's failure to
object, we will not second guess counsel through hindsight. Claims of ineffective assistance of
counsel are often best developed through motions for new trial. Thompson, 9 S.W.3d at 814. We
have no such evidence as might have been developed at such a hearing here. Further, Ruiz failed
to brief or otherwise demonstrate how counsel's failure to object to this singular statement would
have resulted in a different outcome. Therefore, since Ruiz failed to meet either prong of the
Strickland test, this point of error is overruled. 

 C. No New Evidence Was Interjected During the State's Closing Argument

 Finally, Ruiz contends the following jury argument interjected new evidence:

 So I submit to you these incidents, state jails, third degrees, one first degree
case, this is nothing to be looked at individually because they were not done by
separate individuals. They were done by one person, Mr. Ruiz. I submit to you that
you look at everything that he's done and you take that and you look at it and you say,
where does he fall between that 5 or the low end to 99 years or life on the high end? 
Do we take off five years because he did not get the weapon? Do we take off five
years because he was not able to take the pepper spray from the officer? Do we take
off five years because he was not able to successfully force Officer St. Clair off his
back? Do we take off five years because he did not have a car wreck and hurt
somebody in the community on the streets? Do we take off five years because he
was able to not harm any others on the street? Or do we take off five years because
not only did he not take out -- he took out a traffic stop, but he hit -- didn't hit parked
cars he swerved around.


 Areas of proper jury argument include summation of the evidence presented at trial, answer
to argument made by opposing counsel, or plea for law enforcement. Jackson v. State, 17 S.W.3d
664, 673 (Tex. Crim. App. 2000); Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). 
A "jury argument must be extreme or manifestly improper, or inject new and harmful facts into
evidence to constitute reversible error." Gaddis, 753 S.W.2d at 398. 

 We reject Ruiz's theory that the jury argument above interjected new evidence which had not
been presented. It does no more than summarize some of the evidence elicited by officers during
the trial, evidence which established that although he tried, Ruiz was unable to gain control of
St.Â Clair's weapon or pepper spray, that Ruiz was eventually controlled by the officers, that no one
was physically harmed during either the March 10 or the July 10 incidents, and that he did not collide
with any other vehicles during either incident. Additionally, we believe that the argument was
merely a plea for law enforcement. Because the State's argument was proper, counsel was not
required to object. Therefore, the failure of Ruiz's counsel to object to this argument did not deny
him the effective assistance of counsel. 

IV. Conclusion

 We hold that Ruiz's counsel was not required to object to the State's proper references to
parole and its plea for law enforcement. Ruiz also failed to meet his burden to prove that he was
prejudiced by virtue of his counsel's failure to object to the State's reference to plea bargaining. 
Accordingly, we find that Ruiz failed to show that he was denied the effective assistance of counsel
during the punishment trial. 

 We affirm the judgment. 




 Bailey C. Moseley

 Justice


Date Submitted: January 5, 2009

Date Decided: January 8, 2009


Do Not Publish


1. In cause numbers 06-08-00137-CR, 06-08-00138-CR, and 06-08-00139-CR, he appeals
convictions for possession of marihuana in an amount between four ounces and five pounds,
possession of less than one gram of cocaine, and evading arrest, respectively. In these three cases,
Ruiz was sentenced to two years' imprisonment in a state-jail facility, to run concurrently. Ruiz also
appeals his conviction in cause number 06-08-00140-CR of possession of methamphetamine in an
amount between one and four grams. Ruiz was sentenced in this case to five years' imprisonment,
to run concurrently. Finally, in cause number 06-08-00141-CR, Ruiz was convicted of attempting
to take a weapon from a police officer, for which he received two years' imprisonment in a state-jail
facility, to run concurrently, and was assessed a $2,000.00 fine. 
2. The conviction having been in Dallas County, this case was originally appealed to the Fifth
Court of Appeals and was then transferred to this Court by the Texas Supreme Court pursuant to its
docket equalization efforts. See Tex. Gov't Code Ann. §Â 73.001 (Vernon 2005). We are unaware
of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant
issue. See Tex. R. App. P. 41.3.
3. With a level one (or clinical) restraint, pressure is applied to both sides of the neck with the
trachea and throat being protected in the crook of the elbow. Pressure is applied by squeezing the
forearm and bicep together, while pressing in and down on the elbow. No pressure is directed to the
throat, and the subject can still breathe and speak with only minimal discomfort. With a level two
(or locked) restraint, the pressure application is identical, but this restraint is locked into position
with the subject's second arm. By locking a vascular restraint into position, it prevents the restraint
from sliding into a respiratory restraint (bar-arm choke hold), which is common during an actual
physical struggle. http://www.brazilianjiujitsugear.com/forums/showthread. php?t=5201.
4. In most plea bargain negotiations, one of the issues involves whether the defendant would
enter a guilty plea. In such a circumstance, if a jury heard mention of plea negotiations, it might infer
that the defendant would have entered a plea of guilty if promised a light sentence. However, the
potential impact of a statement such as this is substantially reduced when, as here, a plea of guilty
is entered, rendering the sole negotiation point as being the penalty to be assessed.